JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

AMY LELLI

**(b)** County of Residence of First Listed Plaintiff: Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esq. #319145 The Gold Law Firm, P.C.
1835 Market St., Ste. 515, Phila, PA 19103

## DEFENDANTS

PHILLY LMG LLC

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
Title VII of the Civil Rights Act of 1964

Brief description of cause:
Employment Discrimination matter

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 150,000 IN EXCESS

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______________________ DOCKET NUMBER ______________________

DATE: 09/10/2026

SIGNATURE OF ATTORNEY OF RECORD: /S/ BRIAN C. FARRELL, ESQUIRE I.D. 319145

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: 2401 Walnut Street Philadelphia, PA 19103

***RELATED CASE IF ANY:*** Case Number:________________ Judge:____________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ■ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- XX 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:________________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ■ **does not** have implications beyond the parties before the court and ☐ **does** / ■ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

XX Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

AMY LELLI : CIVIL ACTION NO:
:
v. :
PHILLY LMG LLC :
:

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (☑)

| | | |
|---|---|---|
| 09/10/2026 | /s/ Brian C. Farrell, Esquire | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | bfarrell@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMY LELLI**<br><br>Plaintiff,<br><br>v.<br><br>**PHILLY LMG LLC**<br><br>Defendant. | Civ. No.:<br><br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

## I. PRELIMINARY STATEMENT

Plaintiff Amy Lelli files this Complaint against Defendant Philly LMG LLC ("Defendant" or "Philly LMG"). Plaintiff asserts claims for retaliation and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA"). Plaintiff worked as Executive Assistant to Defendant's President. A male coworker pursued her romantically, told coworkers they were a couple, and drank in the office. Plaintiff reported his conduct to the President, to the Compliance Director, and finally in writing. Three days after her written complaint, Defendant suspended her without pay. Five days after that, Defendant terminated her employment. Defendant then brought the coworker back with a new title and a private office. Plaintiff seeks all remedies available under Title VII and the PHRA.

## II. PARTIES

1. Plaintiff Amy Lelli ("Plaintiff") is an adult female individual who resides in Clifton Heights, Pennsylvania 19018.

2. Defendant Philly LMG LLC is, on information and belief, a Pennsylvania limited liability company with its principal place of business at 2401 Walnut Street, Philadelphia. On information and belief, Defendant does business as Philly Living Management Group.

3. Defendant provides residential property management and related services in the Philadelphia area.

4. At all relevant times, Defendant acted through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of Defendant.

5. At all relevant times, Defendant employed fifteen or more employees and was an "employer" within the meaning of Title VII.

6. At all relevant times, Defendant employed four or more employees and was an "employer" within the meaning of the PHRA.

7. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of Title VII and the PHRA.

## III. <u>JURISDICTION AND VENUE</u>

8. The causes of action set forth in this Complaint arise under Title VII and the PHRA.

9. The District Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §1331.

10. The District Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. §1367 because those claims arise from the same nucleus of operative facts as her federal claims.

11. Defendant is subject to the personal jurisdiction of this Court because, without limitation, the case arises out of or relates to the contacts of Defendant with Pennsylvania, and/or

the contacts of Defendant are continuous and systematic such that Defendant is considered at home in Pennsylvania.

12. Venue is proper under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3) because Defendant resides in this District, a substantial part of the events or omissions giving rise to the claims occurred within this District, and the employment records relevant to those claims are maintained within this District.

13. On or about May 14, 2025, Plaintiff dual-filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").

14. On June 12, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue. Plaintiff has filed this action within 90 days of receiving the Notice of Right to Sue from the EEOC.

## IV. <u>FACTUAL ALLEGATIONS</u>

15. On October 28, 2024, Plaintiff began working for Defendant as Executive Assistant to Matt Bremner, Defendant's President.

16. Kara Bremner, Matt Bremner's wife, served as Defendant's Compliance Director and head of human resources.

17. Early in her employment, Plaintiff was introduced to Joel Hirsch ("Hirsch"). Defendant first hired Hirsch on a part-time basis at the request of his father, a significant client of Defendant.

18. On December 3, 2024, Hirsch became a full-time employee. Hirsch designated his own job title as "Director of Innovation" despite having limited professional experience.

19. Shortly after meeting Plaintiff, Hirsch began disclosing to her deeply personal information, including traumatic childhood experiences, complex family matters, and the

substantial wealth he expected to inherit. These disclosures were inappropriate in a professional setting and made Plaintiff uncomfortable.

20. Early in her interactions with Hirsch, Plaintiff told him that she was in a relationship with a man she had been seeing for approximately four months. Plaintiff was open with Hirsch and with other coworkers that she was already seeing someone, and she occasionally mentioned in casual conversation that she was going to dinner or away for the weekend with him.

21. Over time, Hirsch grew increasingly solicitous of Plaintiff and asked her for personal favors unrelated to work.

22. Throughout December 2024, Hirsch implied to coworkers that he and Plaintiff were in a sexual relationship and allowed coworkers to draw that inference. They were not.

23. Throughout December 2024, coworkers, including Angie Vernick, repeatedly questioned Plaintiff about a romantic relationship between Plaintiff and Hirsch and suggested that one existed. Vernick continued to question Plaintiff after Plaintiff had told her multiple times that she and Hirsch were only friendly and that she was seeing someone else. Plaintiff explicitly and consistently denied any such relationship.

24. On one occasion, in front of three other coworkers, Kara Bremner remarked to Plaintiff, "Well, you and Joel…" Plaintiff immediately responded, "There is no me and Joel."

25. On another occasion, Plaintiff mentioned to Scott, the male coworker with whom she shared an office, that the man she was dating was taking her to dinner that evening. Scott responded, "Are you sleeping with him?" Scott was friendly with several of the coworkers who, Plaintiff later learned, had been gossiping about Plaintiff and Hirsch.

26. On December 6, 2024, Hirsch asked Plaintiff to go to happy hour with him after work. Plaintiff told him she had plans to meet a friend. Hirsch continued to pressure her, as he had

on prior occasions, and Plaintiff agreed to one quick drink and something to eat before leaving to meet her friend. Unbeknownst to Plaintiff, Hirsch told the coworker with whom he shared an office that he had a "date" after work. During the outing, Hirsch took a photograph of the two of them and sent it to Kara Bremner.

27. On December 13, 2024, Defendant held its company holiday party. As the party was ending, Hirsch asked Plaintiff whether she wanted to "spend time" with him afterward. Plaintiff said she had a prior engagement but could go for one drink. During that drink, Hirsch, who was intoxicated, repeatedly expressed his desire to be in a relationship with Plaintiff. When Plaintiff told him she only wanted to be his friend, Hirsch became agitated and told her he did not want to be friends with her. He told her they should be together and said, "Even Nina Marie thinks so." He said that "everyone thinks so." He told Plaintiff he envisioned the two of them building the company together as a "power couple."

28. Plaintiff told Hirsch that she was not interested in him romantically, that she was already dating someone exclusively, and that she was focused on her career. Hirsch refused to accept her answer and the conversation dragged on. Eventually Plaintiff told Hirsch she needed to leave and had called an Uber. Hirsch's advances were unwelcome, distressing, offensive, and humiliating.

29. Hirsch walked Plaintiff outside and attempted to kiss her without her consent. Plaintiff turned away and left. On another occasion, Hirsch asked Plaintiff to go away with him for a weekend. Plaintiff declined.

30. On December 16, 2024, Plaintiff reported Hirsch's sexual harassment directly to Matt Bremner. Bremner assured Plaintiff that Hirsch would face repercussions if he continued to behave inappropriately and told Plaintiff that her position within the company was protected.

31. Plaintiff's December 16, 2024 report was protected activity under Title VII and the PHRA.

32. Despite Plaintiff's complaint, Hirsch's inappropriate behavior continued. On December 19, 2024, Hirsch openly consumed bourbon in the workplace, in Matt Bremner's office and in Bremner's presence, and offered Plaintiff a drink. Bremner had already been told of Plaintiff's concerns about Hirsch. Hirsch's drinking violated Defendant's drug- and alcohol-free workplace policy. Later that evening, Hirsch texted Plaintiff, "Hey, thank you for being amazing, that's all."

33. Hirsch also made sexually explicit comments toward colleagues and actively undermined Plaintiff's professional credibility and that of others.

34. On December 19, 2024, while intoxicated in the workplace, Hirsch publicly criticized the performance of Marketing Manager Abigail Fine, whom Plaintiff had supported.

35. On December 20, 2024, Plaintiff arrived at work and saw the bottle of bourbon on Hirsch's desk. Approximately three-quarters of the bottle was gone. An empty rocks glass sat beside it. Plaintiff took her laptop and worked from home that day.

36. As Plaintiff was leaving, her coworker Michele LeVan encouraged her to notify a supervisor about what had been occurring, because Matt and Kara Bremner were leaving for vacation that day. Plaintiff then contacted Nina D'Agostino, Defendant's maintenance supervisor, and told her that Hirsch had made unwanted advances toward her.

37. D'Agostino responded, "Well, you guys are together." Plaintiff told her, "No, we are not." D'Agostino then said, "Oh honey, he is alluding that you two had sexual relations." Plaintiff told D'Agostino that this was false. D'Agostino responded, "He can't do that. It's sexual harassment."

38. This was the first time Plaintiff understood that Hirsch had been creating a false narrative in the workplace that he and Plaintiff had engaged in a sexual relationship.

39. Later on December 20, 2024, Kara Bremner became aware of Plaintiff's report. Kara Bremner briefly spoke with the coworkers involved and instructed everyone to return to work. Kara Bremner did not meet with Plaintiff about her concerns before leaving that day for a two-week vacation.

40. While Matt and Kara Bremner were on vacation, Hirsch did not come into the office. During that same period, Kara Bremner sent a company-wide email wishing Hirsch a happy birthday.

41. When Kara Bremner did meet with Plaintiff about her concerns, she dismissed them. The first thing Kara Bremner said to Plaintiff was, "We didn't hire you for all this drama." Kara Bremner defended Hirsch by twice referring to his purported "skill set." Kara Bremner also told Plaintiff that everyone thought Plaintiff and Hirsch were in a relationship because of how Plaintiff acted.

42. Kara Bremner's response blamed Plaintiff for the harassment she had reported and minimized Plaintiff's complaints of sexual harassment.

43. Plaintiff's December 20, 2024 reports were protected activity under Title VII and the PHRA.

44. Hirsch remained absent from the office, but his belongings remained at his desk. Defendant did not tell Plaintiff whether Hirsch would return.

45. The uncertainty surrounding Hirsch's potential return caused Plaintiff significant emotional and physical distress, including anxiety attacks, migraines, and hives.

46. In early January 2025, Matt Bremner told Plaintiff that Defendant would terminate Hirsch and instructed Plaintiff to send all of her documentation of Hirsch's conduct to human resources.

47. On January 7, 2025, Plaintiff submitted a written complaint to Kara Bremner detailing Hirsch's sexual harassment and misconduct and the hostile conditions Plaintiff had experienced.

48. Plaintiff's January 7, 2025 written complaint was protected activity under Title VII and the PHRA.

49. Immediately after receiving Plaintiff's written complaint, Kara Bremner began meeting with the individuals Plaintiff had identified in her documentation.

50. Kara Bremner's purported investigation did not focus on Hirsch's documented misconduct. It focused instead on allegations against Plaintiff.

51. On January 10, 2025, three days after Plaintiff submitted her written complaint, Defendant suspended Plaintiff without pay. Defendant told Plaintiff that she was being suspended because unnamed individuals had claimed she had "taken inappropriate actions" at work.

52. Defendant did not identify the individuals who made these claims, did not describe the alleged conduct, and did not give Plaintiff an opportunity to respond.

53. On January 15, 2025, Kara Bremner informed Plaintiff by text message that her position was being eliminated. Defendant did not provide Plaintiff with any findings from its purported investigation.

54. On January 16, 2025, Plaintiff emailed Kara Bremner, with a copy to Matt Bremner, objecting that she had been suspended within three days of submitting documentation of sexual harassment at Matt Bremner's direction, and requesting that Defendant communicate the findings

regarding her alleged actions. On information and belief, Defendant never communicated any findings to Plaintiff.

55. On information and belief, Plaintiff's position was not eliminated and the duties of the Executive Assistant to the President were reassigned to others.

56. Shortly after terminating Plaintiff, Defendant reinstated Hirsch under a new title, "Maintenance Coordinator," and provided him with a private office.

57. Defendant retained the harasser and terminated the employee who reported him for unlawful discriminatory conduct.

58. Defendant held Plaintiff responsible for Hirsch's romantic pursuit of her and for the false rumors about her sex life. Kara Bremner told Plaintiff that coworkers believed she was in a relationship with Hirsch because of how Plaintiff acted. Kara Bremner characterized Plaintiff's report of harassment as "drama" that Plaintiff had brought into the workplace.

59. Kara Bremner also told Plaintiff that Plaintiff had wiped food from Hirsch's face while they ate lunch in the office. Kara Bremner was not present for the incident she described. Plaintiff told Kara Bremner that she did not remember doing so. Kara Bremner insisted that she had.

60. Coworkers and management examined ordinary gestures and comments and used them to construct a false narrative of a romantic relationship between Plaintiff and Hirsch. Hirsch went along with that narrative and allowed coworkers to draw those inferences.

61. Defendant treated the man who pursued Plaintiff as a valued employee and treated the woman he pursued as a problem to be removed.

62. Defendant has since confirmed this view in a verified pleading. In its Answer to Plaintiff's PHRC Complaint, verified by Kara Bremner on August 25, 2025, Defendant asserted

that any harassment Plaintiff experienced "was induced and encouraged by Complainant," that "Complainant had been seen caressing Mr. Hirsch's arm as he ate lunch," that "employees saw Complainant repeatedly, and intimately, touching Mr. Hirsch at the holiday party on December 13, 2024," and that "Complainant invited Mr. Hirsch to leave the holiday party with her to continue the night out."

63. Defendant's stated position is that a female employee's ordinary friendliness toward a male coworker invited his romantic pursuit and constituted inappropriate conduct on her part. That position rests on sex stereotypes about how women are expected to behave and about women's responsibility for men's conduct toward them.

64. Defendant did not hold Hirsch to the same standard. Hirsch drank in the office, spread false rumors that he was sexually involved with Plaintiff, and pursued her after she rejected him. Defendant did not suspend Hirsch without pay. Defendant did not terminate Hirsch. Defendant gave him a new title and a private office.

65. The false rumors that Plaintiff was sexually involved with Hirsch were themselves sex-based. They portrayed Plaintiff as a woman who had obtained her position or her standing in the office through a sexual relationship with a wealthy client's son, and they subjected Plaintiff, and not Hirsch, to interrogation about her sexual conduct by coworkers and management.

66. Plaintiff's sex was a motivating and/or determinative factor in Defendant's decisions to subject her to a purported investigation, to suspend her without pay, and to terminate her employment.

67. Before Plaintiff engaged in protected activity, management consistently praised her performance. Matt Bremner publicly endorsed her professional contributions.

68. Defendant never disciplined Plaintiff, never issued her a written warning, and never placed her on a performance improvement plan.

69. Neither Matt Bremner nor Kara Bremner ever told Plaintiff that her job performance was deficient or raised any concern with her about her work ethic or capabilities. The only reason Defendant gave Plaintiff for her suspension was that coworkers had come forward alleging that she had engaged in inappropriate conduct in the workplace.

70. Only after Plaintiff complained of sexual harassment did Defendant claim that Plaintiff had engaged in inappropriate conduct and that her performance was deficient. Defendant's shifting explanations for its treatment of Plaintiff are pretext for retaliation.

71. Defendant suspended and terminated Plaintiff because she complained of sexual harassment.

72. Hirsch's persistent unwelcome romantic and sexual advances, his false statements to coworkers that he and Plaintiff were sexually involved, the resulting interrogation of Plaintiff by coworkers and management about her sex life, and management's refusal to address that conduct created a hostile work environment based on sex that was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

73. Defendant knew of the harassment through Plaintiff's repeated reports to its President and Compliance Director and failed to take prompt and appropriate remedial action.

74. Plaintiff was subjected to the harassment, the rumors, and the interrogation about her sexual conduct because she is a woman.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, emotional distress, anxiety, humiliation, physical symptoms, and damage to her professional reputation.

**<u>COUNT I</u>**
**Title VII**
**(Retaliation)**
**Plaintiff v. Defendant**

76. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein in their entirety.

77. Plaintiff engaged in protected activity under Title VII when she complained of sexual harassment to Matt Bremner on December 16, 2024, to Nina D'Agostino and Kara Bremner on December 20, 2024, and in writing on January 7, 2025.

78. Defendant took materially adverse actions against Plaintiff by initiating a purported investigation directed at her, suspending her without pay on January 10, 2025, and terminating her employment on January 15, 2025.

79. A causal connection exists between Plaintiff's protected activity and the adverse actions.

80. By suspending and terminating Plaintiff's employment because she opposed sexual harassment, Defendant violated Title VII.

81. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

82. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to all relief available under Title VII.

**COUNT II**
**Title VII**
**(Sex Discrimination and Hostile Work Environment)**
**Plaintiff v. Defendant**

83. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein in their entirety.

84. Plaintiff is a woman and a member of a protected class under Title VII.

85. Plaintiff was qualified for her position. Before she complained of harassment, management consistently praised her performance.

86. Defendant subjected Plaintiff to adverse employment actions by directing a purported investigation at her, suspending her without pay, and terminating her employment.

87. Defendant took those actions under circumstances giving rise to an inference of sex discrimination. Defendant blamed Plaintiff for a male coworker's romantic pursuit of her, attributed false rumors about her sex life to her own conduct, characterized her report of harassment as "drama," and has sworn that she "induced and encouraged" the harassment through ordinary friendliness toward a male coworker. Defendant retained, retitled, and gave a private office to the male employee whose conduct she reported.

88. Defendant's decisions were motivated by sex stereotypes concerning how a woman should behave toward male coworkers and concerning a woman's responsibility for a man's conduct toward her. Discrimination based on sex stereotypes is discrimination because of sex under Title VII.

89. Plaintiff's sex was a motivating and/or determinative factor in Defendant's adverse employment actions taken against her.

90. Defendant's stated reasons for suspending and terminating Plaintiff are pretext for discrimination.

91. Plaintiff was also subjected to unwelcome conduct because of her sex, including repeated romantic and sexual advances by Hirsch, false statements by Hirsch to coworkers that he and Plaintiff were in a sexual relationship, and repeated questioning by coworkers and management about her sexual conduct.

92. The conduct was severe or pervasive, detrimentally affected Plaintiff, and would detrimentally affect a reasonable woman in Plaintiff's position.

93. Defendant knew of the harassment through Plaintiff's reports to its President and Compliance Director and failed to take prompt and appropriate remedial action. Defendant instead adopted the rumors, blamed Plaintiff, suspended her, terminated her, and reinstated the harasser.

94. By this conduct, Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her sex in violation of Title VII.

95. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

96. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to all relief available under Title VII.

**COUNT III**
**PHRA**
**(Retaliation)**
**Plaintiff v. Defendant**

97. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein in their entirety.

98. Plaintiff engaged in protected activity under the PHRA when she opposed sexual harassment by complaining to Matt Bremner, to Nina D'Agostino, to Kara Bremner, and in writing to Defendant.

99. Defendant discriminated against Plaintiff because she opposed practices forbidden by the PHRA by subjecting her to a purported investigation directed at her, suspending her without pay, and terminating her employment.

100. A causal connection exists between Plaintiff's protected activity and the adverse actions.

101. By suspending and terminating Plaintiff's employment because she opposed sexual harassment, Defendant violated the PHRA.

102. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to all relief available under the PHRA.

## COUNT IV
**PHRA**
**(Sex Discrimination and Hostile Work Environment)**
**Plaintiff v. Defendant**

103. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein in their entirety.

104. Plaintiff was qualified for her position.

105. Defendant subjected Plaintiff to adverse employment actions by directing a purported investigation at her, suspending her without pay, and terminating her employment, under circumstances giving rise to an inference of sex discrimination, including Defendant's reliance on

sex stereotypes and false rumors about Plaintiff's sexual conduct, and its retention and promotion of the male employee whose conduct she reported.

106. Defendant also subjected Plaintiff to a hostile work environment because of her sex and failed to take prompt and appropriate remedial action after Plaintiff reported the harassment.

107. By this conduct, Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her sex in violation of the PHRA.

108. Defendant's stated reasons for suspending and terminating Plaintiff are pretext for discrimination.

109. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to all relief available under the PHRA.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and relief in connection with Defendant's unlawful conduct, and specifically requests that this Court grant her the following relief by:

(a) declaring the acts and practices complained of herein to violate Title VII;

(b) declaring the acts and practices complained of herein to violate the PHRA;

(c) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(d) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct, including back pay, front pay, and prejudgment interest;

(e) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, reputational damages, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f) awarding punitive damages to Plaintiff under Title VII;

(g) awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

(h) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(i) granting such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

By: /s/ Brian C. Farrell
THE GOLD LAW FIRM, P.C.
Brian C. Farrell, Esquire
Pa. Id. No. 319145
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
bfarrell@discrimlaw.net
*Attorney for Plaintiff Amy Lelli*

Date: September 10, 2026